Theril **WILLIAMS, Individually and as Next Friend for Kay Williams, Appellants,**

v.

**MACATEE, INC., et al., Appellees.**

No. 16456.

Court of Civil Appeals of Texas.

Fort Worth.

Oct. 11, 1963.

Rehearing Denied Nov. 8, 1963.

D. C. Gandy, Fort Worth, for appellants.

Crumley & Hooper, Frank E. Crumley, R. E. Rouer, and Roswald E. Shrull, Fort Worth, for appellees.

LANGDON, Justice.

This is a suit for personal injuries arising out of an automobile collision which occurred in Tarrant County on or about December 30, 1960. It was tried before a jury. Verdict was returned September 21, 1962, by which appellants, Theril Williams, was awarded medical expense of $52.50 and his minor daughter, Kay Williams, $500.00 for personal injuries.

This appeal is from a judgment based upon such verdict. Other plaintiffs in the court below did not perfect an appeal.

Judgment of the trial court is affirmed.

By their first three points of error the appellants contend that the amounts found by the jury for medical expense and personal injuries were so grossly inadequate as to indicate that the jury was under the influence of passion, prejudice or gross mistake and that such findings are so against the overwhelming weight and preponderance of the evidence as to be manifestly unfair, unjust and unconscionable and, as a matter of law, inadequate.

For the reasons hereinafter stated the first three points of error are overruled.

The appellants claim that Kay Williams, age thirteen (13) at the time, received a serious injury to her right knee as a result of the collision which occurred about 7:00 P.M.

Immediately following the collision on December 30, 1960, Kay was taken to the Northwest Hospital. She received a thorough examination. There was a small abrasion on her right leg about six (6) inches below the knee. It was cleaned and dressed by the hospital attendants. X-rays were taken. She remained at the hospital overnight for observation. On the following morning she was dismissed. Four or five days later she was examined by an orthopedic surgeon. Following his examination the surgeon released her without restraint upon her usual activity.

The record reflects that prior to the collision in question Kay had sustained injury to both of her knees as the result of her activities as a cheerleader and that such injuries required medical care and attention. At the hospital immediately following the collision she made no complaint concerning her knees. In May of 1961 some five months after the collision, at the time her first deposition was taken, she made no complaint of injury to either knee although she was given every opportunity to fully

describe the injuries sustained by her as a result of the collision. Soon after her May deposition, Kay began to play softball on her school team and within two weeks of such participation the trouble she had with her knee prior to the collision revisited her. She was required by her doctors to cease her softball activities. Sometime later her right knee locked on her and surgical attention was required.

The surgery involved a condition known as chondromalacia, a softening of the bone under the kneecap which according to the testimony is caused by a direct blow to the kneecap and requires some period of time following the blow to develop. The doctor who performed the operation was of the opinion that the blow to the knee causing this condition which resulted in surgery was received by Kay at the time of the collision. There was abundant testimony from which the jury could have found and believed that Kay injured her knee as the result of the strenuous physical activities in which she participated before and after the collision. The jury was not bound under the the facts of this case to accept the opinion of the surgeon who performed the operation and accordingly rejected it and therefore did not allow the medical and hospital expenses resulting from the surgery.

The record is replete with evidence, including her own testimony, which reflects that Kay actively participated in rather strenuous physical activities in connection with the school program, both before and after the collision in question. Tumbling was one of such activities. Her family physican testified that some three months before the collision that Kay came to him for treatment of her knee, stating that she fell on it while doing a handspring. Examination at that time revealed that both of her legs were edematous. This same family doctor testified from his records that about a month or more before the collision in question he treated Kay's right knee which she had hurt some three or four days before. At this time the knee was swollen and there was a little atrophy of the quad and pitting edema of both legs.

In her testimony Kay advised that she did not miss any school as a result of the collision and that on returning to school after the collision she engaged in normal routine activities, including physical education and tumbling, and in the spring she came out for softball. This young lady was very forthright and candid. She apparently made an excellent witness.

In the summer of 1960, prior to the collision, she was in attendance at a cheerleader school being conducted at SMU for cheerleaders all over the United States. Each group remained one week. During this time she participated in tumbling four (4) hours each day. During the period of her training at SMU she went down on her knee and it popped and was sore. Her knee was wrapped or taped at the time. The knee involved on this occasion was her left knee and required the services of a physician.

■ There was additional testimony, medical and otherwise, from which a jury could very readily find that whatever injuries she received to her right knee were the result of her physical activities as a cheerleader and as a softball player in which activities she engaged before and after the collision in question. The adequacy of the $500.00 awarded to her by the jury for the injury below her right knee was amply supported by the evidence. Under the evidence the jury could very readily have found that the injuries received by her as a result of the collision were superficial and thus denied her any recovery for her injuries.

The bill from Northwest Hospital and Clinic was for $47.50 for room, drugs, x-ray, emergency room, dressings and tray, and professional fee at $5 per day. The office call to the Orthopedic Surgeon on January 5, 1961, was $5.00. The total of the doctor and hospital bills was $52.50, the exact amount found by the jury. The verdict of

the jury is amply supported by the evidence.

In Henderson v. Smith, Tex.Civ.App., 354 S.W.2d 429, 430 (no writ history), in a similar case the court stated the applicable rule as follows: "The appellate court must consider that evidence, if any, which viewed in its most favorable light supports the jury findings. * * * It was within the jury's province to judge the credibility of the witnesses and the weight to be given their testimony, and to resolve conflicts and inconsistencies in the testimony of any one witness as well as the testimony of different witnesses. * * * The jury is not only the judge of the facts and circumstances proven but may also draw reasonable inferences and deductions from the evidence adduced before it."

The first three points are overruled.

The appellants by their fourth point of error contend that the appellees' counsel committed reversible error when he argued to the jury, "Now Mrs. Williams is an interested party. She hopes, with Kay, to enrich themselves, from the verdict in this case. So you and I as sensible people have to measure the value of testimony of a witness who has an interest in a lawsuit." Counsel for the plaintiff made the following objection: "Your Honor, I want to object to the statement of Mr. Crumley that Mrs. Williams has an interest in this lawsuit and wants to enrich herself. She has no claim in this lawsuit except for medical bills, and that's for her husband."

The court instructed the jury that, "* * * any recovery as far as Kay is concerned would be that of Kay, and not Mrs. Williams." In our opinion th instruction cured any harm, if any, which may have resulted from the argument.

Mrs. Williams was the mother of the plaintiff, Kay Williams. Under no circumstances could she be classified as a disinterested witness. It must be presumed from the evidence that she and her daughter very close. She must be classified

as an interested witness. It is proper in the summation of a case before the jury to direct their attention to the external conditions and influences that could probably affect the testimony of a witness. Mrs. Williams was a witness in behalf of her daughter. There were facts and circumstances in the record from which appellees could argue bias and prejudice. Counsel for the defendants was entitled to stress the effect of such influences and draw inferences therefrom.

In Ramirez v. Acker, 134 Tex. 647, 138 S.W.2d 1054, our Supreme Court said: "Great latitude is allowed counsel in discussing the facts and issues. Counsel are permitted to show the environments of the case; they may comment upon the bias or interests of the parties and witnesses, and may discuss the reasonableness or unreasonableness of the evidence and its probative effect or lack of probative effect; but such latitude extends only to the facts and issues raised by the evidence in the case."

If there had been anything prejudicial or inflammatory in the argument, it is presumed that counsel for the plaintiffs would have requested the court to instruct the jury not to consider the argument. He failed to do so. The argument was clearly within the record. The jury knew who the parties were and the relief they were seeking. Those facts were plainly set forth in the pleadings and the charge of the court. They knew she was the mother of the plaintiff, Kay Williams, and the nature of her concern in the outcome of the case was certainly a proper subject for discussion.

The cases cited by counsel for the appellants are not in point. The fourth point of error is overruled.

The fifth point of error is based upon the alleged failure of a juror, who later was selected as foreman of the jury, to reveal on voir dire examination that he had in the past sustained injuries similar to the one alleged by the plaintiff.

At the hearing on the motion for a new trial the counsel for the appellants called one juror as a witness, although all of the jurors were available to him. The juror called as a witness was not asked on direct examination as to whether or not on the voir dire examination he was asked whether or not he had ever sustained any previous bodily injuries. On cross-examination it was developed that he had not been asked about any previous injuries. Counsel for appellees called four jurors at the hearing on the motion for new trial, each of whom testified that they had not been asked about any previous injuries and could not recall a similar question being asked any of the prospective jurors. There was no evidence indicating that there was a discussion of any character in the jury room during deliberations with respect to any previous injuries of any juror.

In Childers v. Texas Employers' Insurance Ass'n, 154 Tex. 88, 273 S.W.2d 587, 588, our Supreme Court said: "The failure of the juror on his voir dire examination to disclose information that he had suffered previous injuries is not the test to be applied in this case, unless the evidence shows that he concealed the fact of previous injury, as alleged in the motion for new trial, and that such action resulted in probable injury to the respondent. Rules 327, 434, and 503, Texas Rules of Civil Procedure. Rule 434 provides that no judgment shall be reversed on appeal and a new trial ordered by the Court of Civil Appeals in any cause on the ground that the trial court has committed an error of law in the course of the trial, unless the appellate court shall be of the opinion that the error complained of amounted to such a denial of the rights of the complaining party as was reasonably calculated to cause and probably did cause the rendition of an improper judgment in the case.

"No probable injury is shown in this record by reason of the fact that Mr. Womack served as a juror in the case. The cases relied upon by the respondent have no application here."

For the reasons stated in the foregoing case the appellants' fifth and final point is overruled. We are of the opinion that the cases cited by the appellants do not have any application to the facts of this case.

Judgment is affirmed.